kanetzky gps 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-534-CV





BILLY WAYNE KANETZKY, INDIVIDUALLY AND BILLY WAYNE KANETZKY,


 AS NEXT FRIEND FOR BILLY WAYNE KANETZKY, JR., AND TONI KANETZKY,


 APPELLANTS


vs.





MAXWELL C. MURPHY, JR. AND LOIS C. MURPHY,



 APPELLEES



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 91-16830-B, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING


 




 Billy Wayne Kanetzky ("Kanetzky") sued Maxwell and Lois Murphy for interfering
with his relationships with his two youngest children; for conspiring to interfere with those
relationships; and for causing Kanetzky serious emotional injury. Kanetzky's new wife, Toni
Kanetzky, and Kanetzky as next friend for his son, Billy Kanetzky, Jr., also sued the grandparents
for causing each of them individually serious emotional injury. The district court rendered a take-nothing summary judgment in favor of the grandparents. We will affirm the summary judgment.



BACKGROUND



 Kanetzky and Mary Murphy are the parents of two young children. Kanetzky and
Mary Murphy divorced in 1989. The divorce decree appointed Mary Murphy managing
conservator of the two children. Kanetzky was appointed possessory conservator, as were
Maxwell and Lois Murphy, the children's maternal grandparents (the "grandparents").

 Mary Murphy and the children were living with the grandparents at the time the
divorce was granted and continued to do so after the divorce. In the fall of 1989, the youngest
child began attending the Hyde Park Baptist Child Development Center, where Lois Murphy
worked. In March 1990, the child's teacher contacted Mary Murphy, and recommended that the
child see a child psychologist. In the ensuing weeks, Mary Murphy and the grandparents learned
that there were strong indications that the child had been sexually abused. On the advice of the
psychologist, these suspicions were reported to the Texas Department of Human Services (DHS).

 The grandparents then filed a motion to limit Kanetzky's access to the children. 
At the hearing on the temporary restraining order, the court appointed a different clinical
psychologist to perform comprehensive psychological testing upon Kanetzky, his new wife, Toni
Kanetzky, and Kanetzky's son, Billy Kanetzky, Jr. (1) Therapy sessions with the youngest child and
the psychological testing of Billy Kanetzky, Jr. indicated some likelihood that Billy Kanetzky, Jr.
had sexually abused the youngest child. Kanetzky, Mary Murphy, and the grandparents agreed
to a series of temporary orders that gave Kanetzky conditional access to the children. Mary
Murphy's status as managing conservator and the grandparents' status as possessory conservators
continued as before. 

 In October 1991, the court entered a final order modifying the divorce decree's
custody provisions. Kanetzky agreed to all of the temporary orders as well as to the final
modification. (2)

 Shortly after the modification order was issued, Kanetzky filed suit against the
grandparents, the day care center, and its various employees. Kanetzky alleged that they each
interfered with Kanetzky's relationships with his children, conspired to interfere with Kanetzky's
relationships with his children, and caused him serious emotional injury. Toni Kanetzky, and
Kanetzky as next friend for his son, Billy Kanetzky, Jr., alleged that they also had suffered serious
emotional injury.

 The grandparents moved for and were granted a take-nothing summary judgment. 
The summary-judgment order also awarded attorney's fees and severed the claims against the
grandparents from the claims against the day-care center and its employees. (3)

 Kanetzky appeals from the summary judgment and award of attorney's fees in favor
of the grandparents.



DISCUSSION



 Kanetzky's first point of error asserts that the district court erred in granting
summary judgment because the summary judgment more closely resembled a dismissal for failure
to state a cause of action. Kanetzky contends that he pled viable causes of action and relating to
those causes of action, disputed material fact issues exist that preclude summary judgment. 
Kanetzky is correct that a pleading defect may not be resolved by summary judgment. Massey
v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983). The question in a summary judgment
appeal is whether the summary-judgment proof establishes as a matter of law that there is no
genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause
of action. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970).

 The standards for reviewing a motion for summary judgment are well established:
(1) The movant for summary judgment has the burden of showing that no genuine issue of
material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 Kanetzky contends that the grandparents interfered with his parent-child relationship
with his two youngest children. This state recognizes a cause of action for interference with
familial relationships. (4) We also recognize that certain relationships give rise to certain duties. 
See Boyles v. Kerr, 36 Tex. Sup. Ct. J. 874, 880 (May 5, 1993). A special relationship, as
between a parent and child or between an employer and employee, can create a duty. See
Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). However, based
upon these facts, we conclude that the grandparents owed Kanetzky no duty and summary
judgment was proper.

 Duty is a threshold inquiry; the plaintiff must establish both the existence and the
violation of a duty owed to the plaintiff by the defendant. El Chico Corp. v. Poole, 732 S.W.2d
306, 311 (Tex. 1987). The question of legal duty is a question of law. Otis Eng'g Corp. v.
Clark, 668 S.W.2d 307, 312 (Tex. 1983). The social utility of the defendant's conduct must be
weighed against the risk, foreseeability, and likelihood of injury in determining whether the law
should impose a duty. Id. When sexual abuse of a child is suspected, the primary duty of any
caretaker is to the child. See, e.g., Tex. Fam. Code Ann. §§ 34.01-.54 (West Supp. 1993) (duty
to report child abuse). The social utility of the grandparents' resort to the courts to protect their
grandchildren from further sexual abuse clearly outweighs the foreseeable consequences that their
ex-son-in-law's visitation rights would be modified. (5) 

 Whether the grandparents owed any duty to their former son-in-law is essential to
Kanetzky's claim for damages for interference with the parent-child relationship. The concept of
duty evolves in response to changes in society. See, e.g., Reagan v. Vaughn, 804 S.W.2d 463,
465 (Tex. 1990); El Chico, 732 S.W.2d at 314; Otis Eng'g, 668 S.W.2d at 311. The rising
incidence of divorce and divided or multiple conservatorships of minor children exemplifies the
concept of change in our society. The Family Code prescribes by statute the rights, privileges,
duties and powers of managing and possessory conservators. Tex. Fam. Code Ann. §§ 14.02,
14.04 (West Supp. 1993). We find it significant that all of the statutory rights, privileges, and
duties relate to the conservators' responsibilities to the child. (6)

 The common law also construes conservators' duties as duties to the child, not to
the other conservators: "[I]t is the child's interests which are ultimately . . . to be protected." 
Williams v. Patton, 821 S.W.2d 141, 145 (Tex. 1991). For example, child support payments
represent a duty to the child rather than a debt to the custodian. Id. Kanetzky failed to establish
that the grandparents owed him any duty, either as an ex-son-in-law or as a co-possessory
conservator.

 Whether the grandparents owed Kanetzky any duty is an essential element of
Kanetzky's cause of action. Based upon these facts, we cannot say that the grandparents owed
Kanetzky an affirmative duty of non-interference when such conduct would clearly conflict with
their duty as possessory conservators to protect their grandchildren. Where no duty is owed as
a matter of law, summary judgment is proper. Otis Eng'g, 668 S.W.2d at 309. Accordingly,
Kanetzky's first point of error is overruled.

 The second point of error contends that summary judgment against Toni Kanetzky
and Billy Kanetzky, Jr. was improper. Toni Kanetzky, and Kanetzky as next friend for his son,
Billy Kanetzky, Jr., alleged that the grandparents caused each of them, individually, serious
emotional injury. Toni Kanetzky and Billy Kanetzky, Jr. each assert independent causes of action
against the grandparents for negligent and intentional infliction of emotional distress. 

 Based upon the Texas Supreme Court's recent decision in Boyles v. Kerr, 36 Tex.
Sup. Ct. J. 874 (May 5, 1993), we regard the trial court's summary judgment against Toni
Kanetzky and Billy Kanetzky, Jr. to be correct. First, Boyles v. Kerr abolished any cause of
action for negligent infliction of emotional distress. Id. at 874. Second, even for intentional
infliction of emotional distress, Toni Kanetzky and Billy Kanetzky, Jr. were still required to
establish the existence of an affirmative duty owed to them by the grandparents. "A claimant may
recover mental anguish damages only in connection with defendant's breach of some other legal
duty." Id. (emphasis added). Neither Toni Kanetzky nor Billy Kanetzky, Jr. have established any
affirmative duty owed them by the grandparents. Thus, the second point of error is overruled.

 The third point of error contends that the trial court erred in holding that
Kanetzky's claims were barred by privilege or collateral estoppel. Because the duty issue is
dispositive, we need not reach this point of error.

 Kanetzky's last point of error protests the award of attorney's fees to the
grandparents. Kanetzky contends that the fee award was not granted at the hearing on the motion
for summary judgment and is therefore void. The order on the summary-judgment motion
decreed that the motion be "in all things, granted." The motion included both a claim for and an
affidavit supporting the award of attorney's fees. The fees awarded in the final judgment flowed
directly from the order on the summary-judgment motion. Kanetzky's fourth point of error is
overruled.



CONCLUSION



 Concluding that the appellees were entitled to summary judgment as a matter of
law, we affirm the judgment of the district court.



 

 Mack Kidd, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: August 11, 1993

[Publish]

1.   Billy Kanetzky, Jr. is Kanetzky's child from a marriage previous to his marriage to Mary
Murphy. Billy Kanetzky, Jr. was sixteen years old at the time the first temporary restraining
order was filed. Kanetzky's custody and living arrangements regarding Billy Kanetzky, Jr. are
unclear from the record. 
2.   Kanetzky's possessory conservatorship continued upon the conditions that Kanetzky take all
steps to protect and keep the children safe and supervised by an adult at all times while in his care;
the children never be left unsupervised with Billy Kanetzky, Jr.; and, if Billy Kanetzky, Jr. moved
back into Kanetzky's household, Mary Murphy would be notified in writing immediately.
3.   The appeal on the severed claims against the other defendants is pending in this court under
Cause No. 03-93-052, Billy Wayne Kanetzky, Individually and Billy Wayne Kanetzky, as next
friend for Billy Wayne Kanetzky, Jr., and Toni Kanetzky v. Hyde Park Baptist Church, Twig
Hobby, Lois Gamble, Gail Kendrick and Connie Benfield.
4.   See Reagan v. Vaughn, 804 S.W.2d 463 (Tex. 1990) (child may recover for loss of parental
consortium when parent suffers disabling injuries); Sanchez v. Schindler, 651 S.W.2d 249 (Tex.
1983) (parent may recover for mental anguish suffered as a result of child's wrongful death);
Whittlesley v. Miller, 572 S.W.2d 665 (Tex. 1978) (spouse may recover for loss of consortium
suffered as a result of negligent injury to other spouse).
5.   Appellees seek to characterize this as an action for malicious prosecution. However, we
will consider Kanetzky's suit as he characterizes it since we note that Kanetzky lacks the essential
element of "no probable cause" necessary to sustain an action for malicious prosecution. See,
e.g., Dominguez v. Kelly, 786 S.W.2d 749 (Tex. App.--El Paso 1990, writ denied) (defendant with
probable cause to believe act or acts of child sexual abuse occurred negates the no-probable-cause
element necessary for malicious-prosecution action).
6.   For example, duties common to managing and possessory conservators include the "duty
of care, control, protection, and reasonable discipline of the child" and the "duty to provide the
child with clothing food, and shelter." Tex. Fam. Code Ann. § 14.04(b)(1),(2) (emphasis added).