**SINGLEENTRY.COM, INC., Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant.**

**No. A–03–CA–094–SS.**

United States District Court, W.D. Texas, Austin Division.

Dec. 29, 2003.

828

Mark Schwartz, Clayton Utkov, DuBois, Bryant, Campbell & Schwartz, LLP, Austin, TX, for Plaintiff.

John R. Riddle, Michael Keeley, Katherine J. Gibson, Strasburger & Price, Dallas, TX, Lloyd E. Ferguson, Strasburger & Price, L.L.P., Austin, TX, for Defendant.

## ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 29th day of December 2003 the Court reviewed the file in the above-styled cause, and specifically Plaintiff's Motion for Partial Summary Judgment [# 20], Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Cross Motion for Partial Summary Judgment [# 23], Plaintiff's Motion for Leave to File Sur–Reply [# 30], Defendant's Motion for Summary Judgment [# 33], and Plaintiff's Response to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment [# 37]. Having considered the motions, cross-motions, responses, replies, appendices, supplements, relevant law and the case file as a whole, the Court now enters the following opinion and orders.

## Background

This is an insurance coverage dispute. St Paul Fire & Marine Insurance Company ("St.Paul") issued to ThinkSpark Corporation, Inc. ("ThinkSpark") an insurance Policy No. TE09101554 that had a policy period of November 9, 2000 to November 9, 2001. *See* App. to Def.'s Resp. Ex. 2 ("the Policy"). The primary dispute in this case concerns the coverage provided by Form 43598 in the Policy, the "Technology Errors and Omissions Liability Protection—Claims–Made" ("the Technology E & O Form"). *See* App. to Def.'s Resp. Ex. 3 (Orig.Pet) Ex. A (Tech. E & O Form). The parties do not dispute this is a "claims-made" policy as opposed to an "occurrence" policy. *See, e.g.,* Pl.'s Resp. to Def.'s Cross Mot. for Summ. J. at 1 (in which Plaintiff addresses what a "claims made policy" requires and why it believes ThinkSpark complied).

Singleentry.com, Inc. ("SingleEntry"), the plaintiff in this lawsuit, entered into a contract with ThinkSpark to create a website for its business. Because SingleEntry never got its website, it filed a lawsuit against ThinkSpark on December 5, 2000 alleging fraud, breach of contract, violations of the Texas Deceptive Trade Practices Act, and an alternative claim for negligent misrepresentation ("the underlying lawsuit"). *See* Pl.'s Mot. for Partial Summ. J. Ex. A ("St. Paul Oct. 2001 Let-

ter") at 1–2. On January 11, 2001, ThinkSpark filed its answer in that lawsuit. *Id.* at 2. On September 19, 2001, St. Paul received its first notice of the underlying lawsuit. *Id.* at. 2. St. Paul refused to tender a defense in the underlying lawsuit. *Id.* at 9. After several months in litigation, ThinkSpark and SingleEntry agreed to resolve their dispute through binding arbitration. On August 7, 2002, SingleEntry obtained an arbitration award against ThinkSpark. *See* Pl.'s Mot. for Partial Summ. J. Ex. E ("Arb.Award"). The state court entered a final judgment confirming the arbitration award on November 18, 2002. *See* Pl.'s Mot. for Partial Summ. J. Ex. F ("Judgment"). On February 11, 2003, the state court entered a turnover order that assigned ThinkSpark's claims against St. Paul to SingleEntry. *See* Pl.'s Mot. for Partial Summ. J. Ex. G ("Turnover Order"). SingleEntry filed this lawsuit in state court against St. Paul as the judgment creditor of the insured ThinkSpark. St. Paul subsequently removed the case on the basis of diversity jurisdiction.

On the page of the Technology E & O Form entitled, "Technology: What To Do If You Have a Loss" it instructs the insured:

> If an accident, error, event, offense, or wrongful act happens that may involve liability protection provided in this policy, you or any other protected person involved must:
>
> 1. Notify the police if a law may have been broken.
> 2. Tell us or our agent what happened as soon as possible. Do this even through no demand for damages or other relief has been made against you or any other protected person, but you or another protected person is aware of having done something that may later result in a demand for damages or other relief. This notice of loss should include all of the following:
>     • The time and place of the accident, error, event, offense, or wrongful act;
>     • The protected person involved;
>     • The specific nature of the accident error, event, offense, or wrongful act, including the type of demand for damages or other relief that may result; and
>     • The names and addresses of any witnesses and injured people.
>
> Notice of loss means notice of an accident, error, event, offense, or wrongful act, other than a written demand or lawsuit, given by or on behalf of;
>     • you or any other protected person involved;
>     • the injured or damaged person or organization; to us or your agent, in sufficient detail to identify you.
>
> 3. Send us a copy of all written demands. Also send us a copy of all legal documents if someone starts a lawsuit.
> 4. Cooperate and assist us in securing and giving evidence, attending hearing and trials, and obtaining the attendance of witnesses.
> 5. Not assume any financial obligation or pay out any money without our consent. But this rule doesn't apply to first aid given to others at a time of an accident.

*See* App. to Def.'s Resp. Ex. 3 (Orig.Pet) Ex. A (Tech. E & O Form) at TS 02955 to TS 02966; *see also* Policy at 000775 to 000776. St. Paul contends these are mandatory notice requirements and, because this a claims-made policy, St. Paul, as the insurer, is not required to demonstrate it was prejudiced by the insured's failure to comply with the requirements. On the

other hand, SingleEntry contends one sentence in the introductory paragraph at the top of the page creates an ambiguity as to whether compliance with the notice provisions is a condition precedent to coverage. That introductory paragraph, with the one sentence underlined, says:

> You or other protected persons are required to perform the duties described below when a property loss that may be covered under this policy happens or an accident, error, event, offense, or wrongful act happens could result in liability damages covered under this policy. *Failure to comply could affect coverage.* The insuring agreements contained in this policy determine what is covered. As a result, you should read them carefully to understand the extent of the coverage provided.

*See* Policy at 000775. It is, of course, this Court's task to interpret the Policy's language.

### Analysis

### I. Summary Judgment Standard

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding summary judgment, the Court should "construe all facts and inferences in the light most favorable to the nonmoving party." *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir.1997), *cert. denied*, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir.1990) (citing

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Both parties bear burdens of producing evidence in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). First, "[t]he moving party must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof." *Hart*, 127 F.3d at 435 (citing *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548). The nonmoving party must then "set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings." *Id.* (citing Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996).

### II. Cross–Motions for Partial Summary Judgment

SingleEntry and St. Paul filed cross-motions for summary judgment asking the Court to resolve the legal question of whether the provision in the Technology E & O Form that required ThinkSpark to notify St. Paul of a loss "as soon as possible" is a mandatory notice requirement and therefore a condition precedent to coverage regardless of prejudice or whether any alleged failure to give timely notice by ThinkSpark instead constitutes a mere breach of a covenant in the insurance agreement requiring St. Paul to prove prejudice.

When interpreting an insurance policy, Texas law requires the interpreting court construe it against the insurer and in favor of the insured, *National Union Fire*

*Ins. Co. of Pittsburgh, PA v. Willis,* 296 F.3d 336, 339 (5th Cir.2002). The interpreting court's "primary goal is to give effect to the written expression of the parties' intent ... to ensure the policy is interpreted in such a way as to give effect to each term in the contract so that none will be rendered meaningless." *Id.* Moreover, "all provisions of the policy should be considered with reference to the whole contract so that no provision is controlling." *Id.* Ambiguities in an insurance policy are construed in favor of coverage, but "not every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity." *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 657 (5th Cir.1999) (quoting *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994)). Instead, the policy will be considered ambiguous only if when considered as a whole, " 'it is reasonably susceptible to more than one meaning.' " *Id.* (quoting *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)). The Fifth Circuit has cautioned although the interpreting court should construe ambiguities in an insurance contract against the insurer, it should not "strain to find such ambiguities, if, in so doing, [the interpreting court] defeat[s] the probable intentions of the parties." *Id.* (internal quotations and citations omitted).

SingleEntry argues the Policy's requirement the insured notify the insurer "as soon as possible" should not be interpreted as a condition precedent to coverage because of the single sentence in an introductory paragraph of one section of the Technology E & O Form's warning the failure to comply with that Form's instructions regarding "What To Do If You Have a Loss" *could* affect coverage. However, SingleEntry, in making this argument, has failed to comply with well-established law that the contract be read as a whole and that the Court give effect to each term in the contract so that none will be rendered meaningless. The Policy sets forth the explicit requirements with which the insured must comply to secure coverage in *mandatory* language. Specifically, the Policy states the insured "must ... tell [the insurer or its] agent what happened as soon as possible." Policy at 000775. To interpret this and the other notice requirements as anything other than mandatory requirements would be to render them meaningless and at best mere suggestions to the insured. On the other hand, the "could" provision in the introductory paragraph can be interpreted to mean, if the insured fails to comply with the requirements, the insurer might at its own election provide coverage. St. Paul made the notice requirements quite clear and this Court will not stretch to find the ambiguity SingleEntry urges.

Under Texas law, an insurer is not required to show prejudice from late notice when a claims-made policy is involved. *See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 658–59 (5th Cir.1999); *Hirsch v. Texas Lawyers' Ins. Exchange,* 808 S.W.2d 561, 565 (Tex.App.—El Paso 1991, writ denied). The rationale is that it is the insured's giving of notice to the insurer within the coverage period that triggers coverage, unlike in an occurrence policy, where it is an occurrence during the policy period that triggers coverage. *Matador,* 174 F.3d at 659. Further, courts are to strictly interpret the notice requirements in a claim-made policy because the parties specifically negotiate them. *Id.* In other words, compliance with a claims-made policy's notice requirements is a condition precedent to coverage and "[i]nsurance companies may limit their liability through clear and unambiguous notice provisions, and impose any reasonable conditions they wish upon the insureds under the contract." *National Union Fire Ins. Co. of*

*Pittsburgh v. Willis,* 139 F.Supp.2d 827, 832 (S.D.Tex.2001), *aff'd,* 296 F.3d 336, 339 (5th Cir.2002).

In this case, St. Paul included mandatory notice requirements in its Technology E & O Form, a claims-made policy. Accordingly, if ThinkSpark failed to comply with the notice requirements, including the requirement that it notify St. Paul of a loss "as soon as possible," there would be no coverage under the insuring agreement regardless of whether St. Paul could show ThinkSpark's noncompliance prejudiced it. Thus, the Court denies Plaintiff's motion for partial summary judgment and grants Defendant's cross-motion for summary judgment.

### III. Cross Motions for Summary Judgement

The parties have filed cross-motions for summary judgment on the breach of contract and state insurance law claims asserted by SingleEntry against St. Paul as a third-party beneficiary of St. Paul's insurance contracts with ThinkSpark. *See* First Am. "Petition." St. Paul contends it is entitled to summary judgment because the undisputed facts demonstrate ThinkSpark did not notify the insurer "as soon as possible after SingleEntry filed the underlying lawsuit" as the Technology E & O agreement required. Additionally, St. Paul contends it is entitled to summary judgment on any breach of contract claims related to property damages since property damage was not at issue in the underlying litigation. Finally, St. Paul contends SingleEntry's claim under Section 21.55 of the Texas Insurance Code fails because the provision is inapplicable to parties suing as third-party beneficiaries.

### A. Breach of the Technology E & O Insurance Agreement

■ SingleEntry has sued St. Paul as the Third–Party Beneficiary of its Technology E & O Form insurance agreement with .ThinkSpark for breach of contract. As the Court held above, it is notice that triggers coverage under the Technology E & O Form and the Policy required that ThinkSpark notify St. Paul or its agent "as soon as possible" and that it send St. Paul "a copy of all legal documents if someone starts a lawsuit." *See* App. to Def.'s Resp. Ex. 3 (Orig.Pet) Ex. A (Tech. E & O Form) at TS 02955 to TS 02966. In this case, it is undisputed SingleEntry filed a lawsuit against ThinkSpark on December 5, 2000. *See* Pl.'s Mot. for Partial Summ. J. Ex. A ("St. Paul Oct. 2001 Letter") at 1–2. It is also undisputed that ThinkSpark filed its answer in that lawsuit on January 11, 2001 but St. Paul did not receive notice of the lawsuit until September 19, 2001. *Id.* at 2, The Court holds, even counting conservatively from the date ThinkSpark filed its answer, that at least eight months elapsed between ThinkSpark's awareness of the SingleEntry lawsuit and the time St. Paul received noticed, combined with the lack of any explanation for that delay, negates any finding ThinkSpark notified St. Paul "as soon as possible." *Cf., e.g., National Union Fire Ins. Co. v. Bourn* 441 S.W.2d 592, 595 (Tex.Civ.App.—Fort Worth, 1969, writ ref'd, n.r.e.) (holding 44 days does not constitute notice "as soon as practicable" where the delay is totally unexplained and without excuse). Consequently, St. Paul did not breach the Technology E & O agreement and is entitled to summary judgment on this claim.

### B. Breach of the GCL Policy

■ SingleEntry, as third-party beneficiary of St. Paul's GCL insurance agreement with ThinkSpark, also claims that St. Paul breached its obligation under the St. Paul GCL policy to defend ThinkSpark on SingleEntry's claims of property damage in the underlying lawsuit. This claim borders on frivolous. The claims in the underlying lawsuit were fraud, breach of con-

tract, violations of the Texas Deceptive Trade Practices Act, and alternatively, negligent misrepresentation stemming from ThinkSpark's failure to produce for SingleEntry the website it contractually obligated to produce. Texas courts generally apply the "eight corners rule," also known as the "complaint allegation rule," in deciding whether an insurer has a duty to defend. *Potomac Ins. Co. of Illinois v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 551 (5th Cir.2000). According to the rule, courts should ordinarily determine whether an insurer has a duty to defend "solely from the allegations in the most recent [underlying] petition and the language of the insurance policy." *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir.2001). Nothing in the underlying lawsuit's pleadings suggests SingleEntry claimed in that lawsuit to have suffered property damage as that term is defined in the GCL policy. (In fact, SingleEntry did not even mention "property damage" in this lawsuit until it filed its First Amended "Petition" in July of this year). Accordingly, St. Paul is entitled to summary judgment on this breach of contract claim as well.

## C. Article 21.55 Claims

Finally, SingleEntry sued St. Paul under Article 21.55 of the Texas Insurance Code for failing to tender a defense to ThinkSpark and failing to pay the Final Judgment. However, by its own terms, Article 21.55 does not apply to third-party claims. *See* Tex. Ins.Code. Art. 21.55 § 1(3) (defining "claim" as a "first-party claim made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary"). SingleEntry has not presented authority to the contrary or even rebutted this argument and apparently concedes the point.

Accordingly, St. Paul is entitled to summary judgment on this last claim.

In accordance with the foregoing:

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment [# 20] is DENIED and Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Cross Motion for Partial Summary Judgment [# 23] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Sur-Reply [# 30] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [# 33] is GRANTED and Plaintiff's Response to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment [# 37] is DENIED.

IT IS FINALLY ORDERED Plaintiff's Motion for Leave to File Plaintiff's Designation of Matters Required by Local Rule CV–16(e) [# 45] is GRANTED.